**BYERLYTE CORPORATION v
CLEVELAND (City) et**

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17772.  Decided Oct. 14, 1940.

Gavlin & Babin, Cleveland, for plaintiff-appellee.

Henry S. Brainard, Cleveland; Edward Blythin, Cleveland; Don F. Mills, Cleveland, and Robt. Shoup, Cleveland, for defendants-appellants.

## OPINION

By MORGAN, J.

This case is an appeal on questions of law and fact by defendants appellants, The Cleveland Metropolitan Housing Authority, and The City of Cleveland. The Housing Authority is an agency of the Federal Government and was made a party defendant by reason of the fact that it is the owner of property fronting on Scothan Street opposite plaintiff's land. It has constructed a large number of houses for rental and it is interested in maintaining Scothan Street open for its entire width of forty feet.

Scothan Street is one of the streets dedicated in a plat of an allotment filed for record by S. S. Stone in 1856. The plaintiff-appellee, Byerlyte Corporation, is the owner of the record title to a parcel of land abutting on Scothan Street and its petition alleges that it has been in exclusive adverse possession of a portion of Scothan Street lying in front of its said parcel of land for more than twenty-one years and the petition asks that its title to said portion of Scothan Street be quieted against the defendants. The parties defendant to this action are the appellants herein and also the heirs of S. S. Stone,

The trial court entered a decree quieting the title of plaintiff corporation to that portion of Scothan Street of which it is and has been in adverse possession for more than twenty-one years as prayed for in the petition.

S. S. Stone was the owner of a considerable quantity of land located in the City of Cleveland. In 1856 Stone alloted this land by filing for record a plat of an allotment containing three tracts known as Central Tract, Canal Tract and College Tract. The allotment contained many streets and a large number of lots. The plaintiff by mesne conveyances has succeeded to the record title of six lots in the allotment fronting on West 4th Street (formerly known as St. Lawrende Street) and Scothan Avenue (formerly known as Scothan Street).

The recorded plat contains the following words of dedication:

"The undersigned, S. S. Stone, hereby dedicates to the public the streets, places and levee designated on the foregoing Survey of Central Tract, Canal Tract, and College Tract, for the purposes indicated by such designations, reserving

however to himself, his heirs and assigns the right to retain the exclusive possession of all or any portion of the same until the same shall be improved by him or them upon such grades as he or they shall deem advisable at his or their own expense and until the lots adjoining shall have been disposed of to separate purchasers should he or they see fit, so long to retain such possession. Reserving also to himself, his heirs and assigns, the right to lay down and perpetually maintain all such water pipes as he shall deem advisable along and across the same, and to lay down and perpetually maintain along and across any or all of said streets and all such railroad tracks as he or they shall desire. Said reserved rights and privileges are personal to the undersigned, his heirs and assigns and are not to pass by the conveyance of the lots or otherwise excepting by express grant designating the conveyance of such rights and reservations."

All of the property, the title of which is sought to be quieted in this action, appears on the plat as a part of Scothan Street. The plaintiff does not claim to have record title to any part of Scothan Street; therefore his title thereto rests solely on adverse possession for the statutory period. The evidence establishes that the plaintiff and his predecessors in title have erected tanks and other structures in that portion of Scothan Street as to which it seeks to have its title quieted and that this possession has continued for more than twenty-one years.

Plaintiff's first claim is that the attempted dedication of Scothan Street in the recorded plat is invalid because of the reservations contained in the words of dedication for the benefit of Stone, the grantor, his heirs and assigns, and also because the evidence discloses that Scothan Street was never accepted. If this claim of the plaintiff is successfully maintained, it is plaintiff's contention that it has acquired title to the part of Scothan Street occupied by it by adverse possession against the rights of S. S. Stone and his heirs.

The second contention of the plaintiff is that if Scothan Street is a public street of the City of Cleveland the plaintiff has acquired title to the portion of Scothan Street occupied by it by adverse possession against the city and the public by virtue of §11220 GC.

As to plaintiff's first claim, it does not appear from the record that S. S. Stone, or any of his heirs, have ever claimed that the dedication of any street or public place in the plat recorded in 1856 was invalid.

The language of the dedication is in the present tense. It states that "the undersigned, S. S. Stone, hereby dedicates to the public, the streets * * * designated in the foregoing survey * * * for the purposes indicated." Then follows words attempting to reserve to Stone, his heirs and assigns, exclusive possession for certain purposes. It is an important fact that these purposes were related to the improvement and the grading of the streets and did not indicate any intention on the part of the dedicator that the part of the allotment shown in the recorded plat as streets, should ever be used for any other purpose.

It is not necessary in this case to decide whether the reservation by which Stone attempted to retain possession for the purpose of improving and grading the streets of the allotment, was valid or invalid. It does not appear in the record that Stone, his heirs and assigns, ever attempted to assert or to act upon this reservation; certainly not as against the public right in the dedicated street.

If Stone, his heirs and assigns, had ever attempted to exercise the rights reserved in the instrument of dedication and the validity of the reservation had been questioned, the law is clear that any reservation would be held invalid to the extent that it was found to be inconsistent with or repugnant to the dedication. As stated in 16 American Jurisprudence 372, on this subject:

"Conditions repugnant to the grant are void, and leave the grant in full and unrestricted operation."

In 1885, Stone's widow conveyed to plaintiff's predecessor in title the land of which plaintiff now has the record title. The land was described in the deed as lots 780 to 785, inclusive, "in S. S. Stone's Survey of College Tract as shown in the 1856 dedication." The southern boundary of this parcel of land as shown by the Stone Survey was Scothan Street.

In this deed, Stone's widow reserved "to herself, her heirs and assigns, the rights reserved to S. S. Stone, his heirs and assigns" in the instrument of dedication. This reservation by Stone's widow to plaintiff's predecessor in title is inconsistent with the first claim of plaintiff in this case. If the effect of the attempted reservation of the 1856 dedication was to invalidate the dedication of streets, shown by the plat, then Stone's widow in 1885 would have been the owner of the fee in all of the streets of the allotment including Scothan Street, free from any easement in the public. In such event the attempted reservation by Stone's widow in her deed in 1885 would have been superfluous.

We are not, however, left in any doubt as to whether the parties to the 1885 deed considered Scothan Street to be a then existing dedicated street of the City of Cleveland. In the deed from Stone's widow to plaintiff's predecessor in title, appears these words:

"This conveyance is also made subject to the conditions that Grantor shall not be liable to Grantee or his assigns for any damages that may be occasioned to the aforesaid premises by reason of the establishment or the alteration of either St. Lawrence or Scothan Streets by the authorities of the City of Cleveland, nor for any damages that may be occasioned by the grading of either of said streets."

St. Lawrence Street is now known as West 4th Street and marks the east boundary line of the lots which plaintiff has record title as Scothan Street (now known as Scothan Avenue) marks the south line of the land of which plaintiff has record title. The name "Scothen Street" was changed to "Scothan Avenue" by the City Council of Cleveland in 1905, when all City streets running East and West were changed from streets to avenues. Including Scothan Street in said ordinance of 1905 was a recognition by the City of the existence of Scothan Street in the City.

West 4th Street connects at right angles with Scothan Street and is a used existing street. The only dedication of West 4th Street shown by the record is in the Stone recorded Survey of 1856.

It is our conclusion that the attempted reservation for the benefit of Stone, his heirs and assigns, are ▮▮ not so inconsistent and repugnant to the words of dedication in praesenti, in the 1856 dedication as to render the dedication invalid. If there is such inconsistency or repugnance to that extent the reservation is invalid.

Plaintiff's next claim is that Scothan Street (now Scothan Avenue) was never a street because never accepted. It is conceded that there has been no statutory acceptance of Scothan Avenue by the City by which the City would be required to maintain the street in repair and free from nuisance. Plaintiff, however, concedes "it is not necessary to have a statutory ▮▮ dedication in order to achieve a public thoroughfare." There may be a common law acceptance either by the Municipality, or by public use.

Scothan Street has never been improved. It has not been graded so as to make it available for vehicular traffic. The evidence, however, shows that the street has always been open to travel by the public and that it has always been so used. The photograph of the plaintiff's premises shows a clearly marked pathway on the line of Scothan Avenue in front of plaintiff's premises. Scothan Avenue connects 4th and 5th streets, both of which are admittedly used and existing City

streets. As to the public use of Scothan Avenue, David N. Myers, the President of the plaintiff coroporation, testified as follows:

"Q. Did people use that part of Scothan Avenue traveling between 5th and 4th Streets throughout the years?
A. You mean the land to the south of our plant?
Q. That is right.
A. There was some people that live there going by.
Q. And traveling between 5th and 4th Streets?
A. That is right."

The testimony of Mr. Myers was confirmed by the evidence of a number of old residents living in the neighborhood. We believe this to be a sufficient acceptance of the dedication by public use.

The following authorities we believe state the law on this branch of the case.

13 Ruling Case Law 24:

"PLAT GENERALLY: If the owner of land lays it out into blocks and streets and plats the same and sells lots with reference to such plat, he thereby dedicates the streets indicated thereon to the public. The purchasers of the lots acquire, as appurtenant to the same, their easement privilege and advantage which the plan represents as belonging to them and they will not be permitted thereafter to revoke the plan, or to re-assert any right to the actual possession of the land so dedicated, at least so long as it remains in public use. * * *

The grantor is equally bound, though the plat with reference to which the lots are sold was made and recorded by a third person. There is complete dedication as against him, even though the street is not accepted by the public authorities, or is not opened and improved for public use, and such dedication is none the less irrevocable on that account. The purchasers acquire the same rights in the highway as against the original owner and each other under such circumstances as they would if it were in fact a public highway including the rights of access to and from the passage over it."

16 American Jurisprudence, page 390:

"§42. Necessity of Immediate Improvement; Difficulty of Improvement. —It is not essential to the validity of the dedication such as of streets, that they be opened and improved within any given time. If the street has been dedicated and the dedication accepted, delay does not work an abandonment except insofar as statutory or charter provisions fix a rule to the contrary. A dedication is none the less irrevocable on account of the delay. The dedication implies only that the streets will be used as such when the public exigencies require it. Until they are so opened and improved they remain in abeyance. * * *

A dedication of land as a street cannot be defeated by considerations as to its adaptability for that purpose, the difficulty of preparing it for such a use, or the extent or necessity of its use as a street after being prepared therefor."

Shea v City of Ottunwa, 67 Iowa, page 39. Syllabus 2:

"Where land in a City was dedicated to public use for a street, but it was rough and hilly, and was needed and used by the public but little for thirty years, when the city proceeded to grade it, Held, that the delay in improving it did not cause it to revert to the dedicator."

The purchasers of lots in this allotment of which the plaintiff is only one in many, have acquired the right to have at least the adjacent streets shown by the plat, kept open.

16 American Jurisprudence 404:

"§57. Rights acquired under Plat: It has been stated generally that the purchasers of lots according to a plat acquire as appurtenant to the same, every easement, privilege and advantage

which the plan represents as belonging to them. The easements and servitudes indicated by the plat constitute a part of the consideration for which all conveyances referring to the plat are made, and therefore, no person, while claiming under the conveyance can be permitted to repudiate them or to deny that they exist where they are capable of existing."

The next claim of the plaintiff is that if it be found that Scothan Street is a duly dedicated street, it is entitled to have its title quieted to that part of the street occupied by it for more than twenty-one years, by virtue of the provisions of §11220 GC, which is as follows:

Sec. 11220 GC:—If a street or alley, or any part thereof, laid out and shown on the recorded plat of a city or village, has not been opened to the public use and occupancy of the citizens thereof, or other persons, and has been enclosed with a fence by the owner or owners of the inlots, lots or outlots lying on, adjacent to, or along such street or alley, or part thereof, and has remained · in the open, uninterrupted use, adverse possession and occupancy of such owner or owners for the period of twenty-one years, and if such street, alley, inlot or outlot is a part of the tract of land so laid out by the original proprietor or proprietors, the public easement therein shall be extinguished and the right of such city or village, the citizens thereof, or other persons and the council of such city or village and the legal authorities thereof, to use, control or occupy so much of such street or alley as has been fenced up, used, possessed and occupied, shall be barred, except to the owners of such inlots or outlots lying on, adjacent to or along such streets or alleys who have occupied them in the manner aforesaid."

There was a time in Ohio when the question was in doubt whether or not, independent of §11220 GC, an adjacent owner to a City Street, could acquire title to the street or a part thereof by adverse possession or equitable estoppel.

With reference to these early decisions, **Cincinnati v First Presbyterian Church, 8 Ohio 299; Cincinnati v Evans, 5 Oh St 595,** Judge Lawrence, an able Judge of the Common Pleas Court of this county, in 1904, said in the case of **Mooren v Cleveland, 15 Ohio Dec. 456, at page 459:**

"It has been urged on behalf of the plaintiffs, that by reason of the inclosure of the land in dispute by fences for twenty-one years or more, the statute of limitations operates as a bar to the claim of the city here. I am not disposed, however, to accept this view of the matter. It is true that in some early cases in this State our Supreme Court held that Municipal Corporations are subject to the operation of the Statute of Limitations in the same manner and to the same extent as a natural person, and as a consequence that adverse possession of land dedicated for a street, for more than twenty-one years, would bar the claim of the municipality to its use. While these cases have never been directly overruled, the statement therein as to the statute of limitations running against the right of a municipal corporation in streets, has been so questioned in more recent cases that it is not probable that the former would now be followed on that subject."

We believe that the law of Ohio on this subject is stated correctly in the case of **C. &. P. R. R. Company et v City of Cleveland et, 15 C. C. (N.S.) 193.** This case involves the ownership of a city street in the possession of a railroad company for more than the statutory period. In an opinion rendered in 1910, the Circuit Court of this District, said:

"If the city were asserting a merely proprietory title, its action would scarcely lie after this lapse of time, but its title to its streets is held, as already noted, in trust for the · public, whose sovereign right no prescription nor laches should abridge."

We are not unaware of the early decisions in this State affirming the application of the Statute of Limitations to somewhat similar cases. But the authority of those decisions is questioned in **Heddleston v Hendricks, 52 Oh St 460**, where Minshall, J., says at page 467:

"More recent cases place the right of the public as against encroachments on its highways, however long continued, on the ground that they are public nuisances in favor of which the statute of limitations does not run."

See also **L. S. & M. S. Railroad Co. v City of Elyria, 69 Oh St 414, 435; Wasteney v Schott, 58 Oh St 410, 415.**

Those early decisions are, moreover, contrary to the well-defined current of American authority, and this court has long since determined that their applications must be restricted to the particular facts upon which they are founded, until they shall be, as they ought to be, overruled. **Wright v Oberlin, 23 C. C. 509; Morehouse v Burgot et, 22 C. C. 174.**

So also the loss by mere abandonment, mere non-user, of the common right of highway, rests finally on no other or better footing than loss by adverse possession, and is therefore equally illusory (**Neil & Iron Co. v Furnace Co., 46 Oh St 544**). Nor does the doctrine of estoppel, when invoked to accomplish the same result, occupy any firmer foundation. If, as already shown, the legislature can not, unless in the exercise of eminent domain, authorize property to be diverted from the public use to which it was originally dedicated, it is, of course, beyond the reach of any subordinate agency of government so to do; and that which is thus incapable of direct accomplishment must be equally unattainable by indirection. So where there is an entire absence of power to make a grant originally, there can be no room for an estoppel to grow up afterwards (**Railroad Co. v City of Cleveland, 76 Oh St 461, 507**). And this is so because whoever relies upon the conduct of public authorities must take notice of the lim-

its of their power. **Hubbard v Fitzsimmons, 57 Oh St 436, 449.**

It being once established that the premises in controversy were originally dedicated to the public for street purposes, no grant, nor prescription, nor mere non-user, nor equitable estoppel, can change its status.

The case of **Railroad Company v Cleveland, 15 C. C. (N.S.) 193**, was affirmed without report in **87 Oh St 469**. A writ of certiorari in the same case was denied by the Supreme Court of the United States in **235 U. S. 50.**

This is in accord with the law generally in this country on this subject. See an excellent statement in Elliott on Streets and Roads, 4th Ed Vol. 2, §1189, page 1696.

"It has been held that non-user is evidence of abandonment and many of the courts influenced perhaps by the hardships that would result from the contrary holding in the particular cases under consideration, have applied the doctrine of equitable estoppel where the claimant had made expensive improvements and acquired, or apparently acquired, rights of such a nature and under such circumstances that to deprive him of them seemed highly inequitable and unjust. We doubt, however, if the doctrine of some, if not most of these cases can be sustained by principle, at least where the city or the local authorities have done no affirmative act to mislead the claimant. It is difficult to conceive upon what principle an equitable estoppel can be securely placed in such cases for the person who encroaches upon a public way must know as a matter of law that the way belongs to the public and that the local authorities can neither directly nor indirectly alien the way and that they cannot divert it to a private use. As the person who uses the highway must possess this knowledge and in legal contemplation does possess it, one of the chief elements of an estoppel is absent. An estoppel cannot exist where the knowledge of both parties is equal, and nothing is done by the one to mislead the other. In addition to this consideration may be noted another influ-

ential one already suggested in a different connection and that is, the private use of the public way was wrong in the beginning and wrong each day of its continuance, and it is a strange perversion of principle to declare that one who bases his claim on an original and continued wrong may successfully appeal to equity to sanction and establish such claim."

That the earlier decisions in Ohio on this subject, (8 Ohio 299, 5 Oh St 595) are no longer law or must be restricted to their special facts, is shown by the fact that they are not even cited in the brief of the plaintiff in this case.

We believe it cannot be denied that if Scothan Street is to be considered a duly dedicated street in the City of Cleveland, the plaintiff can succeed in this case only by bringing itself within the terms of §11220 GC.

An examination of §11220 GC, shows that under it, it is not only necessary that there shall have been adverse possession and occupancy for ▉▉▉▉ at least 21 years, but also first, that the street "has not been opened to the public use and occupancy of the citizens thereof or other persons" and second, "has been enclosed with a fence by the owner or owners of the adjacent lots."

A street is deemed to be open to the public when the public are not denied access to it and are making some use of it. It is not required that a street be graded or improved in order to consider it "open for public use."

In **Reed v City of Toledo, 18 Ohio Rep. 161**, the court said on page 166:

"By the term **opening**, we do not understand the improvement of a street or highway by grading, culverting, etc.; the term is generally (we think always) clearly distinguishable from such kind of improvement. The term opening refers to the throwing open to the public, what before was appropriated to individual use, and the removing of such obstructions as exist on the surface of the earth, rather than any artificial improvement of the surface."

The above statement in **18 Ohio Rep. 161**, was cited and approved in Patterson v M. & C. C. of Baltimore, 130 Md. 645, at page 657.

See also:

Douglas v Regan, 123 Md. 18.

Wilson v Janes, 29 Kans. 233, page 248.

Wilcoxen v Sam Louis Obisco, 35 Pac. 988.

Phila. v Thos. Ayers, 25 Atl. 873 (Penna).

Baum v Ross, 167 U. S. page 584, at page 586.

We therefore conclude that Scothan Street (now Scothan Avenue) has been "opened" and for that reason §11220 GC, cannot aid the plaintiff in this case.

A clue to the purpose of the enactment of §11220 GC is found in the requirement that no right can be attained against the public in a city street, unless the part of the street claimed by adverse possession "has been enclosed with a fence." The construction of the most expensive improvements of a permanent character in the street would not ripen into title under §11220 GC, unless a fence has been constructed. The earlier decisions in Ohio dealing with the law on the subject of acquiring title to city streets by adverse possession and equitable estoppel, uniformly held that the construction and maintenance of a fence for 21 years was not sufficient to acquire title by adverse possession. Such claim, if at all, under these earlier cases, could be established only by improving the property by constructions permanent in character and of great value.

Why does §11220 GC lay stress on the maintenance of a fence for 21 years but does not even mention the construction and maintenance for the statutory period of valuable permanent improvements? In our opinion this is the answer. It is well known that in boom times speculators and others have laid out and recorded allotments of farm property near cities and towns, that proved to be nothing more than paper allotments. No improvements were made, no streets op-

ened, and the fences remained in place. Frequently the hopes of the projectors of the proposed improvements that some industry would settle in the neighborhood and that there would be a rapid sale of lots, proved illusory, yet in the County Recorder's office was to be found a plat of an allotment showing this farm property to be criss-crossed with streets and other public tracts dedicated to the public use.

Such a recorded plat is a cloud on the title of the land. The legislature of Ohio evidently came to the conclusion that if nothing should be done with such a paper allotment for 21 years, it should not be necessary to put the land owner to the expense of legal proceedings in order to clear the title.

We believe that it was to provide for such a state of affairs that §11220 GC was passed. It was never intended in our opinion, to apply to any case where as in the present action, a bona fide allotment was recorded, followed by an extensive sale of lots and general use of its streets by the public. It does not appear in this record that the public has ever been denied the right of user of any street dedicated by the allotment except in the case of an encroachment on the street by a private owner as in the present case.

In all of the conveyances of the land of which plaintiff has record title from the conveyance by S. S. Stone's widow in 1885 to plaintiff's predecessor in title, down to the present time, the existence of Scothan Street has been recognized. In the deed by which the plaintiff in this case acquired title on September 26, 1931, the following is a part of the description of the land:

"Premises situated in the City of Cleveland, County of Cuyahoga and State of Ohio, and known as being Sublots 781, 783, 784 and 785 in the S. S. Stone College Tract, of part of original Brooklyn Township Lot 87, as shown by the recorded plat in Volume 2 of Maps, pages 31 and 32 of Cuyahoga County Records, and together forming a parcel of land, bounded and described as follows:

"Beginning in the southwesterly line of W. 4th St. (formerly St. Lawrence Street) at its point of intersection with the Northwesterly line of Scothan Avenue S. W. (formerly Scothan Street) * * * thence Southeasterly along the Southwesterly lines of said sublots Nos. 785, 784, 783, 782, 781 and 780, 191 feet to the Northwesterly line of Scothan Avenue S. W.; thence Northeasterly along the said Northwesterly line of Scothan Street S. W. 148 feet 6 inches to the place of beginning, be the same more or less, but subject to all legal highways."

Where possession has been continuous, it has been held that adverse possession for the required period by different owners can ripen into title. The tacking of the possession of different owners is usually permitted even when the descriptions in the deeds do not include all of the land. We know of no case, however, where tacking has been permitted and title by adverse possession has been acquired to any property where the deeds of conveyance not only clearly show that no claim of title was made to such property, but also are inconsistent with the making of any such claim. The deed by which plaintiff claims title, refers to the original allotment, by volume and page of record and expressly states that the conveyance is subject to all legal highways and that the south line of plaintiff's property is Scothan Street.

It is difficult to see how any rights to Scothan Avenue could pass to the plaintiff by possession or by a deed which establishes the north line of Scothen Street as dedicated, as the south line of plaintiff's property. The deed by which plaintiff claims title amounts to a disclaimer by plaintiff's grantor of any interest in Scothan Avenue and plaintiff itself has been in possession for less than one-half of the statutory period.

The fact that the plaintiff and all of his predecessors in title had recognized the existence of Scothan Avenue is an important fact in this case. The early decisions in the Circuit Court of the 6th Circuit, showed a tendency to follow the earlier decisions in Ohio, which indicated the possibility of obtaining title to a city street by passage of time. Nevertheless, in a case in that Circuit, **Reynolds v Newton, 14 C. C. 433** (6th Circuit) the Court said in paragraph 3 of the syllabus:

"* * * Where it appears that the predecessors in title of the claimant, within twenty-one years, had in their deeds and mortgages recognized the existence of the street as such, and had described the lots as extending to and bounded by the street, the fact that the land, part of such street, was kept fenced in by them, would not be construed as a claim against the City to the same as a public street."

The record shows that no taxes have ever been paid by plaintiff by reason of its possession of any part of Scothan Avenue. Its encroachments on the street were either deliberate or the result of carelessness, and it was not misled, by any act of the City of Cleveland, as to the southern boundary line of its property. It is hard to see, therefore, what equitable considerations of any merit can be urged by the plaintiff in this case; especially in view of the fact that Scothan Avenue is now located in the most thickly settled and crowded portion of the City of Cleveland and when both the City of Cleveland and the Metropolitan Housing Authority now find that public convenience and necessity require that the street be made available for public use for its entire width of forty feet.

For these reasons the majority of this Court have concluded that the relief prayed for by the plaintiff in this case should be denied.

TERRELL, PJ., concurs.
LIEGHLEY, J., dissents.