OPINION
{¶ 1} Defendant-appellant, Lake Metroparks, appeals the judgment of the Lake County Court of Common Pleas, denying its motion for summary judgment against plaintiffs-appellees, Donald and Patricia Law, on the claim for adverse possession asserted in the complaint and on Lake Metroparks' counterclaim for trespass. For the following reasons, we reverse the decision of the court below.
 {¶ 2} The Laws have owned residential property located at 6965 Ravenna Road, Painesville, Ohio, since 1971. Shortly after acquiring the property, the Laws landscaped the back portion of their property, planting shrubs, grass and a garden, and building a tool shed. In 1978, the Laws built a children's playhouse at the back of their property.
 {¶ 3} The property located directly behind the Laws' residence was formerly owned by CSX Transportation, Inc. In October 1990, this property was purchased, by quitclaim deed, by Lake Metroparks. In 2003, Lake Metroparks had a survey done of the property, which indicated that Lake Metroparks was entitled to the area at the rear of the Laws' property, measuring 15 feet deep and 207 feet wide.
 {¶ 4} On August 3, 2005, the Laws filed a complaint against Lake Metroparks, seeking a declaration that they are "the true and lawful owners" of the disputed property. Lake Metroparks answered and asserted a counterclaim for trespass. Lake Metroparks moved for summary judgment on the Laws' complaint and on its counterclaim.
 {¶ 5} On March 31, 2006, the court of common pleas entered judgment denying Lake Metroparks' motion for summary judgment as to both the claim and counterclaim. This appeal timely follows.
 {¶ 6} On appeal, Lake Metroparks raises the following assignment of error: "The trial court erred to the prejudice of Defendant-Appellant in overruling its motion for summary judgment made at the close of Plaintiff-Appellee's case."
 {¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336.
 {¶ 8} The issue presented by Lake Metroparks is whether the statute of limitations in an adverse possession claim continues to accrue where the subject property is owned by a political subdivision of the state of Ohio. Stated otherwise, we must decide whether a political subdivision of the state of Ohio may be divested of real property through adverse possession.
 {¶ 9} In Houck v. Bd. of Park Commrs., 6th Dist. No. H-05-018,2006-Ohio-2488, the Sixth District Court of Appeals held that time does not run against a park district, as a political subdivision of the state, for the purpose of establishing a claim of adverse possession. Id. at ]}17. The Sixth District's decision relied on the disfavor with which courts look upon claims of adverse possession and the relative "narrowness of the authority for permitting adverse possession to any political subdivision." Id. at 1J1J15-17. We reach the same conclusion as the Sixth District and reverse the trial court's holding that Lake Metroparks could be divested of property through adverse possession. In doing so, we note additional reasons why park districts are to be immune from claims of adverse possession.
 {¶ 10} In Ohio, the principle of "nullum tempus occurrit regi," i.e. "time does not obstruct the rights of government," bars the acquisition of land owned by "the general and state governments" by adverse possession or prescription. Haynes v. Jones (1915), 91 Ohio St. 197, paragraph three of the syllabus ("[n]o adverse occupation and use of land belonging to the state of Ohio, however long continued, can divest the title of the state in and to such lands"); Oxford Twp. v.Columbia (1882), 38 Ohio St. 87, 95; Cincinnati v. First PresbyterianChurch (1838), 8 Ohio 298, 309. Whether political subdivisions of the state of Ohio and whether municipal corporations enjoyed the same immunity that the state enjoyed remained a distinct issue. FirstPresbyterian, 8 Ohio at 310 ("immunity [from statutes of limitations] * * * seems to be an attribute of sovereignty only"). The rule at common law was that the immunity to claims of adverse possession and prescription extended to political subdivisions and municipalities.1540 Columbus Corp. v. Cuyahoga Cty. (1990), 68 Ohio App.3d 713, 718 ("a common-law rule has long existed which provides that the state and its political subdivisions are not subject to loss of their streets and highways by adverse possession or prescription").
 {¶ 11} The reason for the general rule that "the statute of limitations does not apply to bar the rights of the public" being "that the same active vigilance cannot be expected of it, as is known to characterize that of a private person, always jealous of his rights and prompt to repel any invasion of them." Heddleston v. Hendricks (1895),52 Ohio St. 460, 465.
 {¶ 12} The rule that municipalities and instrumentalities of the state were immune from the running of the statute of limitations applied most consistently to encroachments on public roads and rights of way.[1]
The earliest of these cases held that encroachments on lands dedicated as public highways, even if neither required nor used for public travel, were "not necessarily adverse to the public," i.e. such use was permissive, and, there, the passage of time did not bar the reclamation of such lands by the public. Lane v. Kennedy (1861), 13 Ohio St. 42, at syllabus (emphasis sic); McClelland v. Miller (1876), 28 Ohio St. 488,502 ("the mere inclosing of a part of a highway by a fence, does not necessarily constitute such adverse possession, as against the public, as will confer title by mere lapse of time").
 {¶ 13} Thereafter, additional reasons were adduced for barring the acquisition of public lands by adverse possession. In Little Miami RR.Co. v. Commrs. of Greene Cty. (1877), 31 Ohio St. 338, the Supreme Court rejected the possibility of raising the statute of limitations defense against the public on the grounds that such encroachments constituted a "public nuisance" and that "no length of time can legalize a public nuisance."[2] Id. at 349 ("in all cases where an effort has been made to acquire title to a portion of a public highway by adverse possession and enjoyment outside of a municipal corporation, such effort as failed").
 {¶ 14} In reaching the conclusion that Lake Metroparks is not entitled to immunity against the Laws' adverse possession claim, the court below relied on Brown v. Bd. of Edn. (1969), 20 Ohio St.2d 68. InBrown, the plaintiffs sought title to land, through adverse possession, owned by the board of education. The Supreme Court was faced with the task of reconciling prior decisions that alternatively held that a board of education did and did not share in the state's sovereign immunity.Bd. of Education of Cincinnati v. Volk (1905), 72 Ohio St. 469, 485 (as a "mere instrumentality of the state," a board of education was entitled to share in the immunity possessed by the state as an attribute of its sovereignty); see, however, State ex rel. Bd. of Edn. of SpringfieldCity School Dist. v. Gibson (1935), 130 Ohio St. 318, at paragraph one of the syllabus ("[i]mmunity attaching to the state does not accrue to the benefit of a board of education or school district").
 {¶ 15} The Brown court reconciled these cases by considering the function being performed by the school board in each case. The court noted that, in Volk, the issue involved a school board's tort liability. In Gibson, the action was based on a contractual obligation. After considering the statutes setting forth the corporate powers of a board of education, the court concluded these statutes authorized property claims against a board of education. The court reasoned that, "since Section 3313.17, Revised Code, confers upon a board of education the capacity of `acquiring, holding, possessing, and disposing of real * * * property, and taking and holding in trust for the use and benefit of such district, any grant of devise of land' as well as the capacity to sue and be sued, it may be construed as consenting to a suit with respect to such real property. If such a suit has been consented to by the state, and nothing has been said about the statute of limitations being inapplicable, the authorities generally recognize that such statute will apply." 20 Ohio St.2d at 73.
 {¶ 16} In applying Brown to the present case, the trial court noted that the board of park commissioners of a park district is "a body politic and corporate and may sue and be sued." R.C. 1545.07. The board of park commissioners may "acquire lands," R.C. 1545.11, and "may sell and dispose of * * * lands upon terms the board considers advisable." R.C.1545.12. In these respects, the trial court found that a board of park commissioners is similar to a board of education and, accordingly, held the Laws were entitled to advance their claim to the land against Lake Metroparks through adverse possession.
 {¶ 17} We disagree that the Brown decision governs the outcome in this case. Several appellate courts, including this one, have limitedBrown to the facts upon which it was decided. See Wyatt v. Ohio Dept. ofTransp. (Lake 1993), 87 Ohio App.3d 1, 5 ("Brown has been limited to its facts"); Nusekabel v. Cincinnati Pub. School Emps. Credit Union,Inc. (1997), 125 Ohio App.3d 427, 435 ("[a]lso limited to its facts isBrown"). As explained in 1540 Columbus, "Brown is limited on its facts to property held by the board of education, the property of which is not a legal highway or street." 68 Ohio App.3d at 719. In the present case, the property is held by park district and is open for public travel.
 {¶ 18} The property at issue in the present case is the Metroparks Greenway Bikeway, a bicycle trail linking Painesville and Concord Township. The character of this land as a public ground distinguishes this case from Brown and the other cases which have allowed the acquisition of land from political subdivisions through adverse possession. Although not a properly dedicated public street or highway, the Greenway Bikeway, a space opened and dedicated for public use and travel, falls within the scope of immunity for public roads as judicially recognized in the early cases. As discussed above, it has been ruled that encroachments on public roads constituted a public nuisance, which "no length of time can legalize." Little Miami,31 Ohio St. at 349.
 {¶ 19} A public nuisance has been statutorily defined in Ohio since 1857 as the obstruction, "by fences, building, structures, or otherwise," of "any public ground or highway." Heddleston,52 Ohio St. at 467 (emphasis added), citing Rev. Stat. 6921 (now R.C. 5589.01). At common law, public nuisance entailed an "unreasonable interference with a right common to the general public." Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 712, citing Restatement of the Law 2d, Torts (1979), 87, Section 821B. There had to "be some interference with a public right which is common to all members of the general public." Id. Either understanding of public nuisance is broad enough to include the Lake Metroparks bikeway at issue herein.
 {¶ 20} The Brown case is also distinguishable because it involved property owned by a board of education. In deciding Brown, the Supreme Court was trying to reconcile conflicting decisions on the issue of whether a board of education was included within the state's sovereign immunity. As regards a park district established under R.C. Chapter 1545, the Supreme Court has always held that such districts are full "beneficiaries of the state's sovereign immunity." Schenkolewski v.Cleveland Metroparks Sys. (1981), 67 Ohio St.2d 31, 34; Willoughby Hillsv. Bd. of Park Commrs. (1965), 3 Ohio St.2d 49, 51 ("it becomes very clear that this court has found a park district to be a political subdivision of the state of Ohio which performs a function of the state that is governmental in character"). Accordingly, Lake Metroparks is entitled to assert the defense of governmental immunity except where its "alleged liability has arisen out of the exercise of a proprietary function." Schenkolewski, 57 Ohio St.2d 31, paragraph two of the syllabus.
 {¶ 21} Since this court has previously limited the application ofBrown to its facts and Brown is factually and legally distinguishable from the present case, the trial court incorrectly applied its holding in this case. As public grounds, the Metroparks' bikeway is not subject to acquisition by adverse possession.
 {¶ 22} Even if Brown did apply to the facts of the present case, the statutes delineating the corporate powers of a park district do not authorize the acquisition of park property by adverse possession. The statute enabling a park district to engage in litigation provides that the board of a park district "may sue and be sued as provided in section1545.01 to 1545.28 of the Revised Code." R.C. 1545.07. Nothing in these sections indicates that the state has waived the immunity of park districts from adverse possession. Similarly, park districts may acquire and hold property "for conservation of * * * natural resources * * * and to those ends may create parks, parkways, forest reservations, and other reservations * * * as the board deems conducive to the general welfare." R.C. 1545.11. A park district may alienate the lands it holds if it finds they "are not necessary for the purposes for which they were acquired." R.C. 1545.12(A). These statutes make clear that a park district's ability to possess land is conditioned on the park district using the land for an appropriate governmental purpose.
 {¶ 23} Finally, public policy compels the conclusion that the right of private persons to acquire public lands by adverse possession or prescription be extremely limited. It has long been recognized that "the same active vigilance cannot be expected of [political subdivisions], as is known to characterize that of a private person." Heddleston,52 Ohio St. at 465. The same is true today. "Undeveloped land is a precious commodity in today's crowded world, and a municipality should not lose its rights in a property, or the property itself, because it has not yet determined a suitable purpose for the land. The public, for whom the municipality holds the property in trust, should not suffer for a government's * * * inattention no matter what the land's purpose."Nusekabel, 125 Ohio App.3d at 436.
 {¶ 24} For the foregoing reasons, the sole assignment of error is with merit. The judgment of the Lake County Court of Common Pleas is reversed and this case is remanded for further proceedings consistent with this opinion.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY OTOOLE, J., dissents.
[1] In a few of the early cases, it was held that municipal corporations could be divested of title to public lands by adverse possession under certain circumstances. See First Presbyterian,8 Ohio 298, at syllabus; Cincinnati v. Evans (1855), 5 Ohio St. 594, at syllabus. As the trial court noted, these cases are now "uniformly distinguished" and limited to their specific facts. By the beginning of the twentieth century, the Ohio Supreme Court asserted that "it is the well settled law of this State that encroachments upon a public highway never ripen into a title by adverse possession." Lake Shore MichiganS. Ry. Co. v. Elyria (1904), 69 Ohio St. 414, 435. See, also,Heddleston, 52 Ohio St. at 465 (characterizing these decisions as "exceptional" and "confined to municipal corporations in cases where their possession has been disturbed by the erection of large and valuable structures under such circumstances as preclude the idea that encroachment was simply permissive on the part of the municipality").
[2] This rule was subsequently modified by legislative enactment. General Code 11220 (now R.C. 2305.05) expressly provided for the acquisition of land dedicated by a municipal corporation for use as a public road by adverse possession, on the condition that the land "has not been opened to the public use and occupancy of the citizens thereof * * * and has been enclosed with a fence by the owners of the * * * lots * * * lying * * * adjacent." See Byerlyte Corp. v. Cleveland (App. 1940), 32 Ohio L. Abs. 609, 1940 Ohio App. LEXIS 1116, at *25 (discussing the relationship of R.C. 2305.05 to earlier Ohio decisions); LTV Steel Co.,Inc. v. Cleveland (Oct. 15, 1987), 8th Dist. No. 53827, 1987 Ohio App. LEXIS 9170, at *1 (R.C. 2305.05 "[c]arved out * * * an exception to the general principle that municipal corporations are not subject to property loss by adverse possession or prescription").