DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Terry and Barbara Beaver (hereinafter "the Beavers") appeal the decision of the Summit County Court of Common Pleas in the Beavers' action to quiet title to their real property.
 I.
Jerry Williams owns real property at 500 Aqua Dale Drive, Uniontown, which he purchased in 1958.[1] Included in Williams' property is the private lane known as Aqua Dale Drive. This private lane connects Williams' residence to the public road Cottage Grove Road, which is approximately thirteen hundred feet west of Williams' residence. Williams' purchase agreement included Aqua Dale Drive and the eighty acres that included his residence. Without the lane, Williams' land would be landlocked. Upon discovering that the deed did not include a description of the lane, Williams obtained a second deed from his grantor for the lane itself. The deed for the lane was filed in 1963.
Adjacent to Williams' property on the west is property that the Beavers purchased in 1985. This property has no access to the main road, Cottage Grove Road. At the time the Beavers purchased the property, the owner Goodman Mash used Aqua Dale Drive with the permission of Williams in order to access the main road. Mash did not advise the Beavers that the lane belonged to Williams and that there was no easement of record allowing Mash or his successors in interest to use Aqua Dale Drive.
There is some dispute about just when the Beavers first learned that their property was landlocked. Williams testified that he told the Beavers about this fact just shortly before the closing on the Beavers' property in the summer of 1985. Terry Beaver testified that Williams advised him of the fact about one month after the closing. At any rate, Williams told the Beavers that in the past Williams had permitted the owners of the Beaver property to use his lane, and they had helped Williams pay for the maintenance of Aqua Dale Drive. The Beavers refused to pay Williams for the upkeep of the lane but Williams told the Beavers that he would not stop them from using the private lane.
In 1992, the Beavers attempted to refinance their property, but the mortgage company said it would not issue a loan because there was no record of any means of ingress or egress to the landlocked property. In order to secure the refinancing, Terry Beaver sought and obtained a written agreement from Williams for the use of the lane. On February 23, 1992, Terry Beaver and Williams signed a contract which provided that from year to year Williams would permit the use of Aqua Dale Drive in exchange for the Beavers' payment of $50 per month, payable in advance in half-yearly installments. The contract provided that the contract could be renegotiated each year, and that if payments were more than fifteen days late, Williams could terminate the contract.
The Beavers paid the contract amount for four and one-half years.[2]
In October 1996, the Beavers stopped paying on the contract, but Williams still permitted them to use the lane. In 1998, the Beavers filed an action to quiet title, seeking a declaratory judgment that the Beavers had an easement by prescription for the use of Aqua Dale Drive. Williams filed a counterclaim for $300 to compensate him for the payment owed under the contract for one-half of the last year, and for a permanent injunction prohibiting the Beavers from using Aqua Dale Drive.
After a bench trial, the trial court determined that the Beavers had not secured an implied easement by prescription as originally claimed, or an easement by necessity, estoppel, or adverse possession, as the Beavers argued at trial. The trial court ordered the Beavers to pay Williams $2,400 pursuant to the contract for the ensuing months that the Beavers used Aqua Dale Drive without paying Williams. The court also ordered the Beavers to pay Williams $50 per month for every month the Beavers use the lane in the future, which "obligation shall become a continuing lien against the [Beavers'] property." Finally, the trial court granted Williams' request for injunctive relief in part, to the extent that the Beavers were prohibited from interfering with Williams' use of Aqua Dale Drive. The trial court also provided that if Williams gives written notice to the Beavers that they are not allowed to use Aqua Dale Drive, they shall be enjoined from further use of the lane. The Beavers filed a timely appeal, and they now assign eight errors for our review.
 II.
We first note that the Beavers' appellate brief does not comply with the requirements of the appellate rules. Their statement of the case is a chronological list of actions in the trial court, and it does not "briefly describ[e] the nature of the case, the course of proceedings, and the disposition of the court below," as required by App.R. 16(A)(5). The brief contains no reference to the record in support of the facts cited as relevant to the assigned errors, as required by App.R. 16(A)(6). Finally, the assigned errors are not separately argued, as required by App.R. 16(A)(7). Notwithstanding the Beavers' failure to file a complying brief, we will consider the merits of their argument in the interest of justice.
All of the assigned errors essentially challenge the weight of the evidence accorded by the trial court. When an appellate court reviews the weight of the evidence
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily against the judgment, will the appellate court reverse and order a new trial. Id.
With this standard in mind, we turn to the substance of the Beavers' arguments.
 EASEMENT BY PRESCRIPTION
The Beavers' property became landlocked in 1942, when John Wenhart subdivided his twenty acres, whose western boundary fronted onto Cottage Grove Road. Wenhart's division of his property left the eastern portion of the property landlocked, except for access on Aqua Dale Drive to the north, and the western portion still fronting onto Cottage Grove Road. The Beavers argue that beginning in 1942 the owners of their property used Aqua Dale Drive to access Cottage Grove Road, and that this ongoing usage amounted to a prescriptive easement. The Beavers never offered any evidence of this, except for aerial photographs that show that Aqua Dale Drive was in existence as of 1938. Williams testified that since he first purchased the property in 1958, he gave permission to the prior owners of the Beavers' property to use Aqua Dale Drive.
In order to prevail on a claim of prescriptive easement, a plaintiff must establish
 that the plaintiff used the property at issue (1) openly, (2) notoriously, (3) adversely to his neighbor's property rights, (4) continuously, and (5) for at least twenty-one years. The plaintiff must prove these elements by clear and convincing evidence. The owner of the servient property must dispel the claimant's proof that the usage was adverse to the servient owner's rights. A use is not adverse if the landowner gave permission, for example, as a neighborly accommodation. The distinctions between the elements of prescription and adverse possession seem limited to the land's actual occupation (which, in many cases, would transform a prescriptive-easement claim into an adverse-possession claim), and to the land's exclusive use. Unlike an adverse-possession claim, the element of exclusive possession of property is not required in a prescriptive-easement claim.
Nusekabel v. Cincinnati Pub. School Employees Credit Union, Inc. (1997),125 Ohio App.3d 427, 433-434. See, also, Coleman v. Penndel Co. (1997),123 Ohio App.3d 125, 131 ("[a] party claiming a prescriptive easement has the responsibility of proving each element by a heightened burden, that of clear and convincing evidence"), and Monroe Bowling Lanes v.Woodsfield Livestock Sales (1969), 17 Ohio App.2d 146, 152 ("[p]ermissive use cannot ripen into an easement by prescription no matter how long continued").
This court has written that "the landowner may assert the defense of permissive use * * * to rebut the plaintiff's allegation that the plaintiff's use of the land was adverse to a landowner's right to the property * * *. If the landowner asserts the defense of permissive use, then the landowner has the burden of proving the existence of his or her permission." Carlyn v. Garn (1995), 105 Ohio App.3d 704, 707.
In the instant case, the Beavers had the burden of demonstrating the continuous, open, notorious and adverse use of the lane for twenty-one years. The Beavers have failed to do so. In fact, their only evidence of the ongoing use of the lane comes from Williams who acknowledges that since at least 1958 he has allowed the owners of the Beavers' property to use the lane. However, Williams testified that he gave permission and that the use was not therefore adverse to his own property interests. The Beavers object to this testimony as self-serving and invalid because there is no written permission for the use of the lane. But the burden belongs to the Beavers to make a prima facie showing of adverse use, at which point defendant will have a responsive burden to prove permissive use. The Beavers have not met their initial burden of proof, and thus Williams had no responsive burden of proof.
This court cannot conclude that the trial court's judgment denying the Beavers' prescriptive easement claim was a manifest miscarriage of justice. The Beavers' first and fourth assignments of error are overruled to the extent they bear upon the issue of a prescriptive easement. Their sixth and seventh assignments of error are also overruled.
The Beavers also argue that the verbal permission that Williams gave to prior owners is not valid because it does not comply with the statute of frauds, which requires that any interest in real property be in writing to be effective. At oral argument, the Beavers conceded that this issue was not raised to the trial court first, and it will not be considered for the first time here. See State v. Childs (1968), 14 Ohio St.2d 56. The Beavers' eighth assignment of error is therefore overruled.
 EASEMENT BY NECESSITY
The Beavers' second legal theory proffered to support their request for an implied easement is that they are entitled to an easement by necessity. We begin with the well-established maxim that "[e]asements implied of necessity are not favored because, like implied easements generally, they are `in derogation of the rule that written instruments shall speak for themselves.' Thus, to justify the implication of an easement by necessity, strict necessity is required." (Internal citations omitted.) Tiller v. Hinton (1985), 19 Ohio St.3d 66, 69.
The Beavers assert that because Williams' lane is the only existing means of ingress and egress, they have an easement of necessity. However, the Beavers misunderstand the concept of easement by necessity. It is not sufficient that a landowner have a physical necessity to transverse another's property to access his own landlocked property. Rather, "[n]ecessity is only a circumstance resorted to for the purpose of showing the intention of the [grantor and grantee] and raising an implication of a grant. The necessity merely furnishes evidence of the intention of the [grantor and grantee]; it is not itself the basis of implication." (Internal citation omitted.) Szaraz v. Consolidated RR.Corp. (1983), 10 Ohio App.3d 89, 92-93. The easement of necessity "is based upon the theory that without it the grantor or grantee, as the case may be, can not make use of his land. It has been stated that `necessity does not of itself create a right of way, but is said to furnish evidence of the grantor's intention to convey a right of way and, therefore, raises an implication of grant.'" (Internal citations omitted.) Trattarv. Bausch (1950), 154 Ohio St. 286, 293.
The Supreme Court of Ohio has held that the following elements must be established to determine that a land is benefited by an implied easement of necessity:
 (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.
Ciski v. Wentworth (1930), 122 Ohio St. 487, at paragraph one of the syllabus.
In the instant case, the Beavers attempted to show that the parties' respective properties had a common owner in the early 1800's. However, it is undisputed that the Beavers' land did not become landlocked until 1942, when John Wenhart, the common owner of the Beavers' property and the adjoining property to their west, subdivided his property. Wenhart never owned either the main portion of Williams' property or the lane. Thus, there was no evidence before the trial court to support any finding of an easement of necessity, which is a legal convention, not a statement of physical fact. In short, "[t]here was no severance of title where one parcel was necessary or beneficial to another parcel. Therefore, there can be no implied easements herein." Kamenar RR. Salvage, Inc. v. Ohio EdisonCo. (1992), 79 Ohio App.3d 685, 690.
At the time that the Beavers' land physically required use of Aqua Dale Drive in order to access the public roadway, i.e. at the time Wenhart divided his property in 1942, the lane was owned by someone other than Wenhart. Prior to that time the larger parcel from which the Beavers' land was created by subdivision had frontage on the public roadway, Cottage Grove Road, and it was not necessary to use Aqua Dale Drive for the benefit of the property.
The Beavers attempted to argue that prior to 1942, owners of the Beaver property used the private lane to access the main road. They did not produce any evidence of this fact. It is clear from the evidence below that John Wenhart was not the owner of Williams' property in 1942 and therefore no easement by necessity exists to burden Williams' land for the benefit of the Beaver property. The Beavers' assertion of physical necessity to use Williams' lane does not create an easement by necessity, where Wenhart did not own Williams' land at the time Wenhart created landlocked property.
The trial court appropriately rejected the Beavers' assertion that they had an easement by necessity. The Beavers' first and fourth assignments of error are overruled as they apply to the issue of easement by necessity.
 EASEMENT BY ESTOPPEL
Finally, the Beavers assert that they are entitled to an easement by estoppel. Such a claim "requires that the party claiming such an easement must have been misled or was caused to change his position to his prejudice." Monroe Bowling Lanes, 17 Ohio App.2d at 149. The Beavers produced no evidence that Williams misled them into believing that they had a right to use his lane, and that they changed their position in reliance on the misrepresentation. Terry Beaver testified that he did not learn that he had no legal right to use Aqua Dale Drive until after he purchased the property.[3] The Beavers' first, second, and fourth assignments of error are overruled to the extent they assert a claim of easement by estoppel.
 III.
The Beavers also assert that the trial court erred in enforcing the parties' contract for the use of Aqua Dale Drive. First, the Beavers argue that the contract was not enforceable, because Williams gave no consideration to the Beavers in exchange for the money paid by the Beavers, because the Beavers already were entitled to an implied easement, pursuant to the theories discussed above. Given our rejection of the Beavers' implied easement claim, we find that this argument has no merit, and we overrule the Beavers' fourth assignment of error.
The Beavers also challenge the award of damages pursuant to the parties' lane-use contract when the contract itself provided that it would terminate upon non-payment. The trial court awarded $2,400 to Williams although Williams only sought $300, the amount still due from the last year of the contract, on which the Beavers only paid for the first half of the year. The undisputed testimony was that Williams continued to allow the Beavers to use the lane even after the Beavers breached the contract by non-payment. This court agrees with the Beavers that the trial court should not have ordered excess damages. We find that the evidence supported the conclusion that the parties had a year-to-year contract, and in the last year the Beavers paid only one-half of the yearly amount. Thus, the damages to be awarded to Williams is for the one-half year payment the Beavers still owe under the last one-year contract, in the amount of $300.
The trial court also ordered continued compliance with the contract, subject only to Williams' right to give written notice he is terminating the contract. The court ordered the Beavers to continue to pay $50 per month for the use of the lane. This judgment exceeds the request of either party pursuant to the complaint and the counter-complaint, and it exceeds the authority of the trial court to impose liability upon the Beavers.
The Beavers' third and fifth assignments of error are sustained.
 IV.
We have reviewed all of the errors assigned by the Beavers and we sustain only their challenge to the amount of damages and the court's order that the parties continue the contract. We vacate the trial court's order awarding $2,400 in damages to Williams. Pursuant to App.R. 12(B) we enter judgment for Williams in the amount of $300.
We affirm the trial court's judgment denying the Beavers' declaratory judgment action because we agree that they are not entitled to any form of implied easement over Williams' property, i.e. Aqua Dale Drive. We vacate the portion of the trial court judgment ordering the parties to continue the contract for use of Aqua Dale Drive. We modify the trial court's grant of injunctive relief to state that the Beavers are enjoined from using Aqua Dale Drive. The trial court's decision is affirmed as modified.
Judgment accordingly.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] It appears that Jerry Williams owns the property individually. Williams objected to the Beavers' initial failure to join Williams' wife Mary Lou in the complaint on the basis that Mrs. Williams has an interest in the real property.
[2] The parties offered differing testimony as to the time that the Beavers breached the contract. Williams testified that payments were received until October 1996, whereas Terry Beaver said he stopped paying in October 1994. However, Terry Beaver also testified that he stopped paying in 1996, and in 1998 filed the instant action.
[3] In fact, Terry Beaver testified that they initially filed suit against Goodman Mash for fraud. However, Terry testified that they did not prevail on the claim. It was not clear from his testimony whether the case proceeded to a resolution on the merits.