HOUCK ET AL., APPELLANTS, *v.* BOARD OF PARK COMMISSIONERS OF THE HURON COUNTY PARK DISTRICT ET AL., APPELLEES.

[Cite as *Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist.,* 116 Ohio St.3d 148, 2007-Ohio-5586.]

(No. 2006–1262—Submitted May 24, 2007—Decided October 25, 2007.)

Lᴜɴᴅʙᴇʀɢ Sᴛʀᴀᴛᴛᴏɴ, J.

## I.  Introduction

{¶ 1} The issue before this court is whether real property owned by a park district established under R.C. Chapter 1545 can be acquired by adverse possession.  Because the underlying legal principles of adverse possession do not apply to park districts, we answer that question in the negative and affirm the court of appeals.

## II.  Facts and Procedure

{¶ 2} Appellants, Richard Houck and others,[1] own property near a corridor of property that was once owned by a railroad and accommodated railroad tracks. Sometime prior to 1979, the railroad ceased its operations and removed the track, ties, ballast, and other fixtures from its property ("railroad property").

{¶ 3} Appellants allege that they entered the railroad property in 1979 and constructed a road, installed a cable to limit access to the road, planted crops, and otherwise used a drainage ditch in cultivating their farm land.

{¶ 4} In 1997, the Northwest Ohio Rails to Trails Association, Inc. ("NORTA"), purchased the railroad property.  A year later NORTA sold the railroad property to appellees, six park districts,[2] as tenants in common for the purpose of constructing a segment of a recreational trail that will run through several northern Ohio counties.

{¶ 5} In February 2001, the Huron County Park Department sent a letter to appellants explaining that the railroad property would be used for a recreational

---

1.  The other property owners are Greenacres Enterprises, Inc., Ronald Sparks, Eldon Smith, and Stieber Brothers, Inc.

2.  The park districts are Huron County, Lorain County, Erie Metroparks, Sandusky County, Wood County, and the Metropolitan Park District of the Toledo area.

trail when finances permitted, but until then, appellants were welcome to use the property.

{¶ 6} In October 2003, appellants filed suit asking the court to quiet title to the railroad property in their favor, arguing that they had acquired title to the railroad property by adverse possession, i.e. they had engaged in at least 21 years of continuous, exclusive, open, and notorious possession adverse to the owners. Appellants alleged that the adverse possession of approximately one-third of the railroad property began in 1949 by a prior property owner, and therefore tacking that period of possession onto appellants' possession of the property, beginning in 1979 satisfied the required 21-year period of continuous possession before the park districts even acquired the property. Appellants alleged that their possession of the remaining two thirds of the property began in 1979.

{¶ 7} The trial court found that the prior owner's claimed possession of the one-third part of the property entailed cultivating the railroad property up to the tracks, which was not hostile for purposes of adverse possession. See *Barnhart v. Detroit, Toledo & Ironton R.R. Co.* (App.1929), 8 Ohio Law Abs. 22, 1929 WL 2879. Thus, the trial court found that appellants' possession of the entire railroad property did not begin until 1979 when they entered the property. However, the court then held that a park district is immune from a claim of adverse possession and that the park districts' purchase of the railroad property in 1998 terminated the appellants' continuous possession of the property at 19 years, two years short of the 21 years required by adverse possession. The court of appeals affirmed.

{¶ 8} This cause is now before this court pursuant to our acceptance of a discretionary appeal.

### III. Analysis

{¶ 9} The critical issue in this case is whether appellants continuously possessed the railroad property for 21 years from the time they first entered the property in 1979. In order to answer that question, we must determine whether park districts are immune from a claim of adverse possession. If they are, then NORTA's sale of the railroad property to the park districts in 1998 effectively terminated appellants' continuous possession of the railroad property approximately two years short of the required 21 years. If park districts are not immune from a claim of adverse possession, then appellants continuously possessed the railroad property for more than the required 21 years, from 1979 until 2001 (the date of the letter from the Huron County Park District notifying appellants of the park districts' intended use of the property), and they will be successful in their adverse-possession claim.

{¶ 10} Under the doctrine of adverse possession, a plaintiff can acquire legal title to another's real property if he or she proves exclusive possession and open,

notorious, continuous, and adverse use for a period of 21 years. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 580–581, 692 N.E.2d 1009. The court of appeals applied the general rule that adverse possession cannot be invoked against the state and its political subdivisions. Further, finding that the law disfavors adverse possession, the court of appeals declined to adopt appellants' argument that adverse possession can be used to acquire property owned by park districts.

{¶ 11} Appellants argue that the state's waiver of sovereign immunity makes park districts amenable to suit, and that the reasoning in *Brown v. Monroeville Local School Dist. Bd. of Edn.* (1969), 20 Ohio St.2d 68, 49 O.O.2d 347, 253 N.E.2d 767, compels this court to hold that adverse possession may be used to acquire property owned by a park district.

### A. Park–District Liability

{¶ 12} We begin our analysis by examining appellants' argument that common-law waiver of immunity opens the door for individuals to invoke adverse possession against a park district. In *Schenkolewski v. Cleveland Metroparks Sys.* (1981), 67 Ohio St.2d 31, 21 O.O.3d 19, 426 N.E.2d 784, the park district owned and operated a zoo. A patron sued the park district in tort for an injury. Applying the common law and statutory rules of tort liability applicable to municipal corporations, and analogizing them to park districts, this court concluded that park districts were not liable for injuries that arose in their exercise of governmental functions, but were liable for injuries that arose in their exercise of proprietary functions. Id. at 38, 21 O.O.3d 19, 426 N.E.2d 784. The court found that owning and operating a zoo was a proprietary function and held the park district liable for the patron's injury.

{¶ 13} In *Marrek v. Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St.3d 194, 9 OBR 508, 459 N.E.2d 873, the court recognized that the "governmental-proprietary dichotomy" had been abolished in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, and applied the dichotomy for purposes of determining a park district's liability. Thus, the court in *Marrek* held:

{¶ 14} "No *tort* action will lie against a board of commissioners of a park district for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, a board of commissioners of a park district will be held liable, the same as private corporations and persons, for the negligence of its employees in the performance of the activities." (Emphasis added.)

{¶ 15} *Schenkolewski* and *Marrek* permitted the public to recover for injuries caused by the negligence of a park district. In the instant case, appellants seek to divest park districts of real property though adverse possession. Thus, *Schenkolewski* and *Marrek* are distinguishable from the instant case.

{¶ 16} Thus, we find that the common law on park-district tort liability is irrelevant for purposes of determining whether adverse possession may be invoked against a park district.

## B. Adverse Possession of Government Property

{¶ 17} Determining whether adverse possession can be applied against a park district is an issue of first impression for this court. However, the common law addressing whether adverse possession applies to various government entities provides guidance to our analysis.

{¶ 18} The general rule is that adverse possession does not apply against the state. See, e.g., *Haynes v. Jones* (1915), 91 Ohio State 197, 110 N.E. 469, syllabus ("No adverse occupation and user of land belonging to the state of Ohio, however long continued, can divest the title of the state in and to such lands"). Early cases recognized that the state, as a sovereign, was not subject to adverse possession; but they declined to extend that immunity to other subdivisions of the state. See *Lessee of Cincinnati v. First Presbyterian Church* (1838), 8 Ohio 298, 310 (municipalities are not immune from adverse possession); *Cincinnati v. Evans* (1855), 5 Ohio St. 594 (relied on *First Presbyterian* to hold that municipalities are not immune from adverse possession); *Oxford Twp. v. Columbia* (1882), 38 Ohio St. 87 (relied on *First Presbyterian* to hold that townships are not immune from adverse possession).

{¶ 19} However, in *Heddleston v. Hendricks* (1895), 52 Ohio St. 460, 40 N.E. 408, this court held that an individual could not adversely possess a public road established by a county. See, also, *Little Miami RR. Co. v. Greene Cty. Commrs.* (1877), 31 Ohio St. 338, 1877 WL 31 (railroad's encroachment on county road was a nuisance that could not mature into adverse possession). The court in *Heddleston* reasoned that "the statute of limitations does not apply as a bar to the rights of the public, unless expressly named in the statute, for the reason that the same active vigilance cannot be expected of it as is known to characterize that of a private person, always jealous of his rights, and prompt to repel any invasion of them." Id. at 465, 40 N.E. 408.

{¶ 20} *Heddleston* also limited the holding in *First Presbyterian* and *Evans*, declaring that "these cases are regarded as exceptional, and confined to municipal corporations in cases where their possession has been disturbed by the erection of large and valuable structures under such circumstances as preclude the idea

that the encroachment was simply permissive on the part of the municipality."
Id.

{¶ 21} In 1969, the court addressed whether adverse possession could be invoked against a school district, in *Brown v. Monroeville Local School Dist. Bd. of Edn.* (1969), 20 Ohio St.2d 68, 49 O.O.2d 347, 253 N.E.2d 767. The court determined that a school board, under R.C. 3313.17, had authority to acquire, hold, possess, and dispose of real property. Thus, the court concluded that a school board consented to a suit with respect to real property, including an action claiming property by adverse possession.

{¶ 22} Appellants herein argue that *Brown* is controlling because a park district has the authority to acquire, hold, and possess property, and thus, like a school board, is amenable to suit in adverse possession. However, since the decision in *Brown,* at least half of Ohio's appellate districts have held that adverse possession *cannot* be applied against the state *or* its political subdivisions. *Anderson v. Alger* (May 14, 1999), 3rd Dist. No. 6–98–10, 1999 WL 378377, *3; *Bonham v. Hamilton,* 12th Dist. No. CA2006–02–030, 2007-Ohio-349, 2007 WL 210587, ¶ 12; *Law v. Lake Metroparks,* 11th Dist. No. 2006–L–072, 2006-Ohio-7010, 2006 WL 3833863, ¶ 21; *Nusekabel v. Cincinnati Pub. School Emps. Credit Union, Inc.* (1st Dist.1997), 125 Ohio App.3d 427, 436, 708 N.E.2d 1015; *1540 Columbus Corp. v. Cuyahoga Cty.* (8th Dist.1990), 68 Ohio App.3d 713, 720, 589 N.E.2d 467; *Bryan v. Killgallon* (Sept. 25, 1981), 6th Dist. No. WMS–81–6, 1981 WL 5791, *2. In coming to this conclusion, many courts have determined that "*Brown* is limited on its facts to property held by the board of education, the property of which is not legal highway or street. *Brown* does not disturb the general rule that political subdivisions of the state are not subject to loss of their streets and highways." *1540 Columbus Corp.,* 68 Ohio App.3d at 719, 589 N.E.2d 467; see, also, *Wyatt v. Ohio Dept. of Transp.* (1993), 87 Ohio App.3d 1, 5, 621 N.E.2d 822; *Nusekabel,* 125 Ohio App.3d at 435, 708 N.E.2d 1015.

C. Public Policy Supports Protection of Park–District Property

{¶ 23} Appellants argue that in all but one of the aforementioned cases, as well as in the earlier cases on which they are based, the property in question was a public road, street, or highway, not an abandoned railroad bed, and thus these cases are distinguishable from the instant case. We acknowledge this factual distinction but find that the nature of the property in question is not critical to our analysis. Rather, it is the general policies underpinning these decisions that we find persuasive to our analysis and that justify continued support of the rule that adverse possession does not apply against park-district property. See *Ohio Dept. of Transp. v. Sullivan* (1988), 38 Ohio St.3d 137, 138–139, 527 N.E.2d 798 (public-policy reasons justify affirming the rule that the statute of limitations does

not apply to the state, even though the original justification of sovereign immunity is outdated).

### 1. Public Use of Property

{¶ 24} One reason for precluding adverse possession of roads, streets, or highways is that it interferes with the *public use* of the property in question. See *Heddleston,* 52 Ohio St. at 465, 40 N.E. 408 ("the statute of limitations does not apply as a bar to the rights of the public"); see, also, *Law v. Lake Metroparks,* 11th Dist. No. 2006–L–072, 2006-Ohio-7010, 2006 WL 3833863 (a recreational trail constitutes a public use of government-owned property); *Joseph v. Akron* (1925), 19 Ohio App. 412 (streets are "held in trust for the public"); *Bonham,* 12th Dist. No. CA2006–02–030, 2007-Ohio-349, 2007 WL 210587, ¶ 12 (the sovereign is said to hold property in trust for the public); but see R.C. 2305.05, which carves out an exception that permits a public street to be adversely possessed, but only where the street "has *not* been *opened* to the public use" for a period of 21 years.

{¶ 25} The very purpose of a park district is the "preservation of good order within and adjacent to parks and reservations of land, and for the *protection* and *preservation* of the *parks, parkways,* and *other reservations of land* under its jurisdiction and control and of property and natural life therein." R.C. 1545.09. We have recognized that a park district's " 'conservation of natural resources' " serves the " 'health and general welfare of the community.' " *Willoughby Hills v. Bd. of Park Commrs. of Cleveland Metro. Park Dist.* (1965), 3 Ohio St.2d 49, 50, 32 O.O.2d 27, 209 N.E.2d 162, quoting *McNab v. Bd. of Park Commrs. of Cleveland Metro. Park Dist.* (1923), 108 Ohio St. 497, 499, 141 N.E. 332. To permit adverse possession of park-district property would interfere with the public's enjoyment and use of park lands as well as with a park district's obligation to conserve and protect park property.

### 2. Obligation to Monitor Property

{¶ 26} As the court in *Heddleston* recognized, a government entity should not be expected to be as vigilant in monitoring its property for trespassers as a private property owner. 52 Ohio St. at 465, 40 N.E. 408; see, also, *Bryan v. Killgallon* (Sept. 25, 1981), 6th Dist. No. WMS–81–6, 1981 WL 5791, at *2 ("The setting aside of land for future public use in order to provide for orderly development is, in and of itself, a valuable use of land resources. That the public might later be deprived of the use of such land by operation of the statute of limitations imposes upon municipalities the burden of continual inspection of all public lands. Such a burden would be prohibitive and contrary to the public interest").

{¶ 27} Amici curiae, the Boards of Park Commissioners of the Columbus and Franklin County Park District and the Franklin County Metropolitan Park

District and the Five Rivers Metro Parks, argue that park-district property boundaries are difficult to monitor due to (1) the large amount of property owned by park districts, (2) the remote nature of some of the property, (3) the lack of resources to adequately monitor property boundaries, (4) the lack of boundary markers, and (5) environmental covenants with the Ohio Environmental Protection Agency that prevent fencing of some park property. An inventory of the properties within parks administered by Board of Park Commissioners of the Lorain County Metro Parks supports amici's assertion that park districts must manage substantial amounts of property spread across great distances. Within Lorain County's almost 500 square miles, there are 22 different park-district-owned properties that contain more than 5,170 acres of woods, wetlands, ponds, and fields, as well as a section of a 65–mile recreational trail. Many acres are left in their natural state. Thus, we find that the determination in *Heddleston* that government entities cannot be expected to be as vigilant as private property owners in monitoring their property is particularly applicable to park districts. As the court stated in *Nusekabel,* the public "should not suffer for a government's negligence or inattention" to its property boundaries, because "[u]ndeveloped land is a precious commodity in today's crowded world." 125 Ohio App.3d at 436, 708 N.E.2d 1015.

## D. *Brown* Is Not Applicable

{¶ 28} Plaintiffs argue that *Brown* supports a holding that adverse possession applies to park districts. Even if *Brown* remains viable law, it has been limited to school-board property. See *1540 Columbus Corp.,* 68 Ohio App.3d at 719, 589 N.E.2d 467; see, also, *Wyatt,* 87 Ohio App.3d at 5, 621 N.E.2d 822; *Nusekabel,* 125 Ohio App.3d at 435, 708 N.E.2d 1015. Furthermore, as we noted above, park districts have certain attributes, i.e., they exist to hold property in trust for the public and they are responsible for thousands of acres of property. These attributes both distinguish park districts from school districts and justify greater protection of park-district property.

## E. The Law Disfavors Adverse Possession

{¶ 29} "Adverse Possession represents the forced infringement of a landowner's rights, a decrease in value of the servient estate, the encouraged exploitation and development of land, the generation of animosity between neighbors, a source of damages to land or loss of land ownership, the creation of forced, involuntary legal battles, and uncertainty and perhaps the loss of property rights to landowners with seisin." *Grace v. Koch* (Oct. 9, 1996), Hamilton App. No. C–950802, 1996 WL 577843, *2. Accordingly, we have recognized that adverse possession is disfavored. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 580, 692 N.E.2d 1009. We find such disfavor especially acute in this case because adverse possession of park

property deprives the public of the enjoyment of park property and imposes a burdensome obligation on park districts to monitor their property.

## IV.  Conclusion

{¶ 30} For all the above reasons, permitting adverse possession of park-district property is against public policy and the legal principles underlying adverse possession.  Accordingly, we hold that property owned by a park district established pursuant to R.C. Chapter 1545 is not subject to adverse possession.  Thus, the park districts herein have valid legal title to the railroad property.  Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and O'CONNOR, RICE, LANZINGER, and CUPP, JJ., concur.

PFIEFER, J., dissents.

CYNTHIA WESTCOTT RICE, J., of the Eleventh Appellate District, sitting for O'DONNELL, J.

---

**PFIEFER, J., dissenting.**

{¶ 31} In *Brown v. Monroeville Local School Dist. Bd. of Edn.* (1969), 20 Ohio St.2d 68, 49 O.O.2d 347, 253 N.E.2d 767, this court held that adverse possession could be maintained against a political subdivision, namely a school district.  The majority attempts to distinguish *Brown* by distinguishing park districts from school districts on grounds of public policy.  The majority's public-policy arguments are misplaced.

{¶ 32} The majority writes that "[t]o permit adverse possession of park-district property would interfere with the public's enjoyment and use of park lands as well as with a park district's obligation to conserve and protect park property."  Here, the park district actually encouraged appellants' use of the property in question in its February 2001 letter.  The park district's long-term plan was not conservation but the development of a bicycle path.  The parkland at issue includes a railbed and a drainage ditch as its most prominent features—not exactly the stuff of postcards.  The bicycle path is a project of the future and probably always will be—the drainage ditch may sooner become the Grand Canyon of Huron County.  Public policy does not require that park districts be able to hold property ad infinitum with vague dreams of one day improving it.

{¶ 33} The majority also argues that a park district should not be expected to be as vigilant in monitoring its property for trespassers as a private property owner.  A once-every-21-year walkabout does not seem like too heavy a burden even for the most financially strapped park district.  To successfully assert

adverse possession, the claiming party must show that his use was "open" and "notorious." *Grace v. Koch* (1998), 81 Ohio St.3d 577, 692 N.E.2d 1009, syllabus. Moreover, park districts should attempt to be aware of any dangerous areas that might be accessed by citizens using the property.

{¶ 34} Since I do not agree with the majority's conclusion that public policy demands a limitation on this court's holding in *Brown*, I would hold that appellants should be granted title to the property in question through adverse possession. At the very least, appellants are entitled to the northern one-third of the property upon which crops had been planted since 1949. The trial court relied on *Barnhart v. Detroit, Toledo & Ironton RR. Co.* (App.1929), 8 Ohio Law Abs. 22, an ancient Lawrence County appellate court decision, for the proposition that the cultivation of crops in a railroad right-of-way does not constitute a "hostile" use for purposes of adverse possession. To the contrary, through the planting and harvesting of crops, appellants and their predecessors met the requirement that a " 'tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest.' " *Grace*, 81 Ohio St.3d at 581, 692 N.E.2d 1009, quoting *Darling v. Ennis* (1980), 138 Vt. 311, 313, 415 A.2d 228.

---

Rengel Law Office, Jeffery Rengel, and Thomas R. Lucas, for appellants.

Spengler Nathanson, P.L.L., Joan C. Szuberla, Teresa L. Grigsby, and Gary D. Sikkema; Tomino & Latchney, L.L.C., and John D. Latchney; Baumgartner & O'Toole, L.P.A., and Abraham Lieberman; and Kuhlman & Beck and Ladd W. Beck, for appellees.

Nan Still, urging reversal for amici curiae Ohio Farm Bureau Federation and Huron County Farm Bureau.

Squire, Sanders & Dempsey, L.L.P., and C. Craig Woods, urging affirmance for amicus curiae Board of Park Commissioners, Columbus and Franklin County Metropolitan Park District.

Thompson Hine L.L.P., and Robert M. Curry, urging affirmance for amicus curiae Board of Park Commissioners, Five Rivers Metroparks.

Isaac, Brandt, Ledman, & Teetor, L.L.P., Mark Landes, and David G. Jennings, urging affirmance for amici curiae County Commissioners' Association of Ohio, Ohio Municipal League, Ohio School Boards Association, and Ohio Township Association.